## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**GERRY BILLY,**

    Plaintiff,

    vs.                         **No. 2:13-CV-0032 MCA/LAM**

**THE CURRY COUNTY BOARD OF
COUNTY COMMISSIONERS,** a political
sub-division existing under the laws of the State
of New Mexico, and **LANCE PYLE,** Individually
and in his official capacity as County Manager for
the Curry County Board of County Commissioners**,
ROBERT SANDOVAL**, Individually, **FRANK
BLACKBURN**, Individually, **BEN MCDANIEL**,
Individually, and **TIM ASHLEY, Individually**,

    Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

    **THIS MATTER** is before the Court on *Defendants' Motion to Dismiss* [Doc. 61],
filed October 30, 2013.  Having considered the parties' submissions, the relevant case
law, and otherwise being fully advised in the premises, the Court will **GRANT**
*Defendants' Motion to Dismiss* [Doc. 61] (Counts II, VI and VII).

**I.**     <u>**BACKGROUND**</u>

    Gerry Billy ("Plaintiff") was hired by the Curry County Board of County
Commissioners to serve as the Detention Center Administrator for Curry County. [Doc.
10-1]  After almost a year of serving as Detention Center Administrator, the Curry
County Board of County Commissioners terminated Plaintiff's employment. [Doc. 10 at

9; Doc. 61 at 3]

On January 11, 2013, Plaintiff initiated this action against the Curry County Board of County Commissioners, a political sub-division existing under the laws of the State of New Mexico, the County Manager, Lance Pyle, individually and in his official capacity, and the Curry County Board of County Commissioners board members: Robert Sandoval, individually, Frank Blackburn, individually, Ben McDaniel, individually, and Tim Ashley, individually, (collectively, "Defendants"), asserting numerous claims stemming from, what Plaintiff alleges to have been, his wrongful termination. [Doc. 1 "*Civil Complaint-Recovery Under 42 U.S.C. § 1983-Due Process-Property Interest; Violation of Equal Protection; Violation of First Amendment; Breach of Contract; Retaliatory Discharge; Interference with Contractual Relations*"].   On February 10, 2013, Plaintiff amended his complaint to include a claim under New Mexico's Whistleblower Protection Act, NMSA 1978, Section 10-16C-1 to –6 (2010).  [Doc. 10, Plaintiff's *First Amended Civil Complaint-Recovery Under 42 U.S.C. § 1983-Due Process-Property Interest; Violation of Equal Protection; Violation of First Amendment; Breach of Contract; Retaliatory Discharge; Interference with Contractual Relations; And Violation of the "Whistleblower Protection Act"* (hereinafter, "First Amended Complaint")].

On October 30, 2013, Defendants filed *Defendants' Motion to Dismiss* requesting that the Court dismiss Plaintiff's equal protection claim, retaliatory discharge claim, and interference with contractual relations claim. [Doc. 61] For the reasons to follow, the

Court will grant Defendant's Motion.

## II.   **STANDARD**

Under Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The sufficiency of a complaint is a question of law, and when considering and addressing a motion to dismiss pursuant to Rule 12(b)(6), a court accepts as true all well-pleaded factual allegations in the complaint, viewing those allegations in the light most favorable to the non-moving party, and drawing all reasonable inferences in the plaintiff's favor.  *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).  In order to withstand a Rule 12(b)(6) motion, a complaint must contain enough facts to state a claim to relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering whether a claim has facial plausibility, a court looks to both "the complaint itself and to any documents attached as exhibits to the complaint." *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (discussing that there are exceptions to the general rule that the sufficiency of a complaint must rest on its contents alone, however they are limited to: "(1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice . . ."); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir.1991) ("A written document that is attached to the complaint as an

exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). If after reviewing the factual allegations in the complaint, a plaintiff has failed to nudge the claims Aacross the line from conceivable to plausible,@ the complaint must be dismissed. *Id.* at 680.

## III.   DISCUSSION

### A. *Local Civil Rule of the United States District Court for the District of New Mexico 7.1(a)*

As an initial matter Plaintiff asserts that Defendants failed to comply with D.N.M.LR-Civ. 7.1(a), and therefore Defendants' Motion should be summarily dismissed. [Doc. 66 at 1] D.N.M.LR-Civ. 7.1(a) provides that a "[m]ovant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied."

Defendants concede that they did not seek Plaintiff's concurrence before filing the *Motion to Dismiss*. [Doc. 67 at 1]. However, Defendants contend that this omission was due to a mistaken belief that D.N.M.LR-Civ. 7.1(a) did not require that concurrence be sought when filing a dispositive motion, such as a motion to dismiss. [Doc. 67 at 1] Defendants note that they attempted to cure this deficiency by requesting concurrence from Plaintiff prior to filing *Defendants' Reply in Support of Motion to Dismiss*, and that

Plaintiff's counsel did not concur.  [Doc. 67].

The Court will not deny Defendants' Motion summarily. Defendants' counsel, albeit late, attempted to cure the deficiency by seeking concurrence from Plaintiff's counsel and Plaintiff's counsel indicated he did not concur.  [Doc. 61]  Therefore, the Court concludes that justice and judicial economy would best be served by addressing the merits of *Defendants' Motion to Dismiss* [Doc. 61], and will waive Defendants' violation of the local rules.

### B. *Plaintiff's Equal Protection Claim*

Plaintiff asserts that Defendants acted "arbitrarily, capriciously, in spite, ill will, and with a malignant animosity towards him" when they "intentionally and purposefully singled him out and targeted [him] and treated him differently than other similarly situated employees" and that such conduct "violated [his] right to equal protection of the laws vouchsafed under the Fourteenth Amendment" [Doc. 10 at 13] Because Plaintiff's equal protection claim does not allege that he is a member of a particular class, it appears that Plaintiff's equal protection claim seeks to proceed on the "class-of-one" theory set forth by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

In *Olech*, the respondent and her late husband asked the petitioner, the Village of Willowbrook, to connect their property to the municipal water line. 528 U.S. at 563.  The petitioner initially agreed, but conditioned the connection on respondent granting petitioner a 33-foot easement on their property. *Id.* The respondent and her husband

objected to the condition on the grounds that the other property owners were only required to provide a 15-foot easement when seeking access to the water supply. *Id.* After a three-month delay, the petitioner agreed to provide a connection to the water supply in exchange for a 15-foot easement. *Id.* The respondent sued petitioner claiming that the demand for the additional easement violated the Equal Protection Clause of the Fourteenth Amendment; was "irrational and wholly arbitrary"; was motivated by ill will resulting from a prior lawsuit between the respondent and petitioner, and; that petitioner "acted with the intent to deprive respondent of her rights or in reckless disregard of her rights." *Id.* The Supreme Court granted certiorari to "determine whether the Equal Protection Clause [provides] a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group." *Id.* The Court explained that in prior cases it has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564.  The Court then looked to respondent's complaint noting that it alleged that the petitioner initially demanded a 33-foot easement as a condition of connecting the respondent's property to the municipal's water supply, where it had only required a 15-foot easement from other property owners. *Id.* at 564.  The complaint further alleged that petitioner's demand was "irrational and wholly arbitrary" and that petitioner ultimately connected her property to the water supply in exchange for the 15-foot easement. *Id.* at 564-65. Therefore, the Court concluded that "where the plaintiff

alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," the plaintiff has pled a cognizable equal protection claim. *Id.*

In addressing the class-of-one theory, our Tenth Circuit has noted that in order "[t]o prevail on this theory, a plaintiff must first establish that others, 'similarly situated in every material respect' were treated differently." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1210 (10th Cir. 2006)). This requires a plaintiff to show that the difference in treatment "was without rational basis" meaning "the government action was 'irrational and abusive,'" and "wholly unrelated to any legitimate state activity[.]"*Kansas Penn Gaming*, 656 F.3d at 1216 (internal citations omitted). This is an objective standard, and a court should not "inquire into the government actor's actual motivations." *Id.*

Here, Plaintiff is not claiming to be part of a protected class, but rather is claiming that he was treated "arbitrarily and capriciously," and therefore is asserting a class-of-one equal protection claim. Count II-Violation of Equal Protection contained in Plaintiff's First Amended Complaint alleges that:

> Defendants [sic] actions, as described in this complaint, against Plaintiff were carried out arbitrarily, capriciously, in spite, ill will, and with a malignant animosity towards him. Plaintiff was singled out, targeted for termination, and not treated like other similarly situated employees. Defendants' conduct violated Plaintiff's right to equal protection under the laws vouchsafed under the Fourteenth Amendment.

[Doc. 10 at 13, &&31-32] Moreover, Plaintiff asserts that Defendants conspired with each

other in effectuating his disparate treatment, and intentionally and purposefully singled

out and targeted Plaintiff and treated him differently than other similarly situated

employees by:

   a. Terminating his contract in violation of the New Mexico Open Meetings
      Act and in violation of the express terms of his written contract.
   b. Refusing to conduct an independent investigation into the allegations of
      wrongful conduct, despite the fact that Lance Pyle had an independent
      investigation conducted regarding being 'yelled at' by a County
      Commissioner.
   c. Refused to disclose an investigator's report given to the County
      Attorney related to Plaintiff.

[Doc. 10 at 13, &&31-32] Moreover, Plaintiff alleges that Defendants "conspired

with each other in effectuating this disparate treatment" [Doc. 10 at 14, &34], and

singled him out and acted "with malignant animosity towards Plaintiff" when:

   a. Robert Sandoval repeatedly alleging falsely and publicly that Plaintiff
      had covered up or was covering up the assault/battery involving an
      inmate on June 28th, 2012.
   b. Refusing to have an independent investigation conducted by the New
      Mexico State Police of Mr. Sandoval's false allegations.
   c. Refusing to provide any documents or explanation for terminating
      Plaintiff.

[Doc. 10 at 14, &33]

    Defendants contend that Plaintiff's equal protection claim should be dismissed

because a class-of-one claim is not a viable claim in public employment context. [Doc. 61

at 4] Defendants rely on *Engquist v. Oregon Dep't of Agriculture, et al*, 553 U.S. 591

(2008) to support their assertion that Plaintiff's equal protection claim should be

dismissed.

    In *Engquist*, the Supreme Court examined the viability of a class-of-one claim in

the context of public employment.  There, a former state employee, who had effectively been laid off during a reorganization of the agency for which she worked, filed suit against her former state employer alleging, among other things, a violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and state law. *Engquist*, 553 U.S. at 594-95.  The former state employee's equal protection claim alleged that the former employer had discriminated against her on the basis of her race, sex, or national origin. *Id.* at 595.  In addition, she alleged a "class-of-one" equal protection claim "alleging that she was fired not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for 'arbitrary, vindictive, and malicious reasons.'"  *Id.*

The Supreme Court granted certiorari to address "whether a public employee can state a claim under the Equal Protection Clause by alleging that [he or] she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class." *Engquist*, 553 U.S. at 594.  The Court ultimately held that "a 'class-of-one' theory of equal protection has no place in the public employment context." *Id.*

In reaching this conclusion, the Court recognized that it has long held the view that there is a "crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'"  *Id.* at 598 (citation omitted) (noting that in the context of public employment, the government, as an

employer, has far broader powers than the government, as a sovereign). The Court

explained that some forms of state action by "their nature involve discretionary decision-

making based on a vast array of subjective, individualized assessments", and that "[i]n

such cases the rule that people should be 'treated alike, under like circumstances and

conditions' is not violated when one person is treated differently from others, because

treating like individuals differently is an accepted consequence of the discretion granted."

*Id.* at 603. "This principle applies most clearly in the employment context, for

employment decisions are quite often subjective and individualized, resting on a wide

array of factors that are difficult to articulate and quantify." *Id.* at 604. The Court

concluded that

> the class-of-one theory of equal protection—which presupposes that like
> individuals should be treated alike, and that to treat them differently is to
> classify them in a way that must survive at least rationality review—is
> simply a poor fit in the public employment context. To treat employees
> differently is not to classify them in a way that raises equal protection
> concerns. Rather, it is simply to exercise the broad discretion that typically
> characterizes the employer-employee relationship. A challenge that one has
> been treated individually in this context, instead of like everyone else, is a
> challenge to the underlying nature of the government action.

*Id.* at 605. Thus, the Court concluded that the class-of-one theory of equal protection is a

"poor fit" in the context of public employment. *Id.*

In response, Plaintiff contends that the prospect of a 'class-of-one' equal

protection claim was recognized by the United States Supreme Court, in *Village of*

*Willowbrook v. Olech*. [Doc. 66 at 5] Plaintiff recognizes *Engquist*'s holding, but

appears to assert that the actions giving rise to his equal protection claim, such as "the

events of Robert Sandoval publically claiming that he had engaged in a 'cover up' of an assault and battery and then retaliating against him when he requested an independent investigation," do not fall within *Engquist*'s holding. [Doc. 66 at 4-5]  Plaintiff, therefore, asserts that Defendants' Motion should be denied because a "[p]laintiff may state a class of one claim against a public official whose actions are motivated by malice or who harasses or otherwise targets him without any conceivable purpose." [Doc. 66 at 5]  Plaintiff cites to *Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir. 2009), and *Lovejoy v. Arapaio*, 2001 WL 466010, *11 (D. Ariz. 2010), to support his assertion.

In *Hanes*, the Seventh Circuit was asked to examine the impact of *Engquist* on the class-of-one theory in the context of police decision-making.  There, the plaintiff sued the municipality and "eleven officers of its police department alleging that the officers denied him—and only him—equal protection of the law, solely for reasons of personal animus." *Hanes*, 578 F.3d at 492.  The officers filed a motion to dismiss on the basis of qualified immunity and failure to state a claim. The district court denied the motion to dismiss relying on *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000), where the Seventh Circuit held that a plaintiff states an equal protection claim "by alleging that the police decided to withdraw all protection . . . out of sheer malice." *Hanes*, 578 F.3d at 492 (quoting *Hilton*, 209 F.3d at 1007).  The officers filed an interlocutory appeal requesting, among other things, that the Seventh Circuit revisit its holding in *Hilton,* in light of *Engquist's* holding that the class-of- one theory is not viable in the context of public employment. *Hanes*, 578 F.3d at 492.  The court declined to reconsider its prior

holding, noting the "significant differences between public employment and policing."

*Hanes*, 578 F.3d at 492.

 *Hanes* is distinguishable from the present case. *Hanes* involved the class-of-one

theory in the context of police-decision making, not public employment, a distinction that

the court in *Hanes* discussed at length. The court explained that "[a]lthough the police

enjoy broad freedom of action, their discretion is much narrower than the discretion given

public employers." *Hanes*, 578 F.3d at 495 (internal citation omitted). In so doing, the

court noted that:

> In contrast to an employer, who is entitled to make decisions based
> on factors that may be difficult to articulate and quantify, an officer must
> justify her decision to stop a suspect by pointing to "articulable facts."
> *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). And
> while employment decisions are inherently subjective, "[s]ubjective
> intentions play no role" in evaluating police seizures under the Fourth
> Amendment. *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769,
> 135 L.Ed. 2d 89 (1996). Second, police officers, in contrast to public
> employers, exercise the government's sovereign power. Accordingly,
> constitutional constraints on police power are the norm. Finally, although
> courts are reluctant to subject routine employment decisions to
> constitutional scrutiny, asking a court to determine whether a police
> officer's act was constitutional is not at all unprecedented.

*Hanes*, 578 F.3d at 495. Therefore, because this case involves decisions that were made

within the context of public employment, and not police decision-making, *Hanes* is not

helpful to Plaintiff's case.

 The Court further finds Plaintiff's reliance on *Lovejoy* to be misplaced. In *Lovejoy*,

a police officer alleged that a county sheriff violated his equal protection rights by

selectively arresting and prosecuting him. 2010 WL 466010 *10. The court concluded

that the allegations in the complaint did not establish that the police officer was part of a class or group that was being discriminated against or that he was similarly situated with other officers that were not subject to investigation. *Id.* Nevertheless, the court recognized that "[a] plaintiff may . . . state an equal protection claim based upon the selective enforcement of the law if he can show that the defendant's alleged rational basis is a pretext for an impermissible motive." *Lovejoy*, 2010 WL 466010 *11.  It explained that "the plaintiff in a class-of-one case does not allege that the defendants discriminate against a group with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." *Id.* The situation presented in *Lovejoy* involved the alleged selective enforcement of the law, not decision-making in the public employment context, and therefore differs greatly from the situation presented here.

        None of the cases cited by Plaintiff suggest that *Engquist* is not controlling.  Here, similar to *Engquist,* Plaintiff is alleging an equal protection claim against a public employer based on allegations that the employer treated him differently than others similarly situated.  This places Plaintiff's equal protection claim within the public employment context addressed in *Engquist*. Therefore, because, as explained in *Engquist*, a class-of-one equal protection claim is not a legally cognizable cause of action in the context of public employment, Plaintiff's equal protection claim will be dismissed.

        Moreover, Plaintiff failed to plead sufficient facts to support a class-of-one equal protection claim under our Tenth Circuit's precedent.  Our Tenth Circuit has emphasized

the importance of carefully applying the plausibility standard in situations where a government actor enjoys a broad range of discretion, and may properly base a decision on variety of potentially relevant variables. *See Kansas Penn Gaming*, 656 F.3d at 1218-19. Thus, our Circuit has explained that "in the wake of *Twombly* and *Iqbal*," a plaintiff can no longer make threadbare allegations of different treatment to similarly situated individuals to defeat a motion to dismiss. *See Kansas Penn Gaming*, 656 F.3d at 1219. Instead, a plaintiff must allege facts that demonstrate that others who were similarly situated in every material respect were treated differently than plaintiff. *See Kansas Penn Gaming*, 656 F.3d at 1218-19.  Plaintiff has failed to do so here. Therefore, Plaintiff's claim will be dismissed.

### C. *Plaintiff's State Law Claims for Interference with Contractual Relations and Retaliatory Discharge*

Defendants contend that Plaintiff's claims for retaliatory discharge and interference with contractual relations should be dismissed because the New Mexico Tort Claims Act ("Tort Claims Act"), NMSA 1978, §§ 41-4-1 to -30 (1978), has not waived governmental immunity for these claims. [Doc. 61 at 4] Defendants further contend that Plaintiff's retaliatory discharge claim is prohibited because such a claim is only available to at will employees, and Plaintiff was employed pursuant to an employment contract. [Doc. 61 at 5] Plaintiff responds by asserting that the actions taken by Defendants fall outside the scope of their official duties, and therefore they are not entitled to immunity. [Doc. 66 at 5]

### 1. **New Mexico Tort Claims Act**

The New Mexico Legislature enacted the Tort Claims Act in an attempt to balance the effects of immunizing governmental entities and public employees from the heavy burdens of lawsuits, while recognizing the "inherently unfair and inequitable result which occurs in the strict application of . . . sovereign immunity." NMSA 1978, § 41–4–2.  In recognition of these competing interests, the Legislature declared the public policy of New Mexico to be "that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act," *see* Section 41-4-2,  and consented to suits against state entities and public employees only in narrow enumerated circumstances, *see* Section 41-4-4 ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978. Waiver of this immunity shall be limited to and governed by the provisions of Sections 41-4-13 through 41-4-25 NMSA 1978, but the waiver of immunity provided in those sections does not waive immunity granted pursuant to the Governmental Immunity Act.").

Under the Tort Claims Act, governmental entities and any public employees that are acting within the scope of duty are immune from liability for any tort except as waived under NMSA 1978, Section 41–4–4(A). The Tort Claims Act defines the term "governmental entity" as "the state or any local public body," NMSA 1978, § 41-4-3(B). A "state" or "state agency" includes "the state of New Mexico or any of its branches,

agencies, departments, boards, instrumentalities or institutions." NMSA 1978, § 41-4-3(H). A "local public body" includes "all political subdivisions of the state and their agencies, instrumentalities and institutions . . ." NMSA 1978, § 41–4–3(C). A "public employee" is defined as "an officer, employee or servant of a governmental entity. . ., [an] elected or appointed official. . . , [and] persons acting on behalf of or in service of a governmental entity in any official capacity, whether with or without compensation." NMSA 1978, § 41–4–3(F)(1) & (4). A public employee or government entity is acting within the "scope of duty" when "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." NMSA 1978, § 41-4-3(G).

The Curry County Board of County Commissioners, its board, and county manager fall within the Tort Claims Act's definition of a governmental entity and public employee. Therefore, Plaintiff may only maintain an action against the Curry County Board of County Commissioners, and Defendants Pyle and Sandoval if the claims alleged fit within one of the waivers of immunity provided under the Tort Claims Act, or if, based on the facts alleged in Plaintiff's First Amended Complaint, Plaintiff has established that Defendants were acting outside the scope of their duties when the allegedly tortious conduct occurred. *See State v. Begay*, 1985-NMCA-117, & 10, 723 P.2d 252, 256 (providing that if no specific waiver can be found in the Tort Claims Act, the Court must dismiss a plaintiff's complaint against the governmental entity or its employees), *rev'd on other grounds by Smialek v. Begay*, 1986-NMSC-049, 721 P.2d

1306.

### 2. Interference with Contractual Relations

New Mexico recognizes a cause of action for tortious interference with contractual relations. *El Dorado Utilities, Inc. v. Eldorado Area Water and Sanitation District*, 2005–NMCA–036, ¶ 24, 109 P.3d 305, 310. To establish a claim for intentional interference with contractual relations under New Mexico law, the plaintiff must allege facts sufficient to show that: (1) the defendant had "knowledge of the contract", (2) "performance of the contract was refused," (3)  the defendant "played an active and substantial part in causing  [the plaintiff]  to lose the benefits of [the] contract, " (4) "damages flowed from the breached contract," and (5) Defendant "induced the breach without justification or privilege to do so." *Bogle v. Summit Investment Co., LLC*, 2005–NMCA–024, ¶ 20, 107 P.3d 520, 528.

Here, Plaintiff's First Amended Complaint names the Curry County Board of County Commissioners, a political sub-division existing under the laws of the State of New Mexico, the County Manager, Lance Pyle,  individually and in his official capacity as County Manager for the Curry County Board of County Commissioners, and the Curry County Board of County Commissioners board members: Robert Sandoval, individually, Frank Blackburn, individually, Ben McDaniel, individually, and Tim Ashley, individually.  [Doc, 10] Plaintiff specifically brings his interference with contractual relations claim against Defendant Curry County Board of Commissioners, Lance Pyle, individually, and Robert Sandoval, individually, and alleges the following:

61. Plaintiff re-alleges each preceding paragraph and incorporates each subsequent paragraph of this Complaint.

62. The Defendants Lance Pyle and Robert Sandoval were aware of Plaintiff's contractual relationship with Defendant the Curry County Board of County Commissioners.

63. The above named Defendants' [sic] engaged in a continuous unlawful campaign against Plaintiff in an attempt to induce the Curry County Board of County Commissioners into breaching its contract with Plaintiff.

64. As a result of the above-named Defendants' intentional, unprivileged, malicious actions Plaintiff's employment was wrongfully terminated on January 8th, 2013.

65. Plaintiff suffered economic damage as a result of Defendant's [sic] interference.

66. Defendant Curry County Board of County Commissioners ratified, adopted, authorized or approved the conduct of each Defendant.

[Doc. 10 at 21-26, &&62-66]

Plaintiff's First Amended Complaint provides the following facts that are relevant

to this claim:

11. On November 15, 2011, Plaintiff interviewed for the position of Curry County Detention Center Administrator by a committee consisting of among others County Manager Lance Pyle.
. . .
14. Plaintiff was provided an 'Employment Contract' which is attached and incorporated herein as Exhibit 1. Plaintiff signed the [e]mployment contract on January 10th, 2012 with Defendant County Commission. The employment contract called for a three year contract which was terminable only for good cause. There is an implied covenant of good faith and fair dealing in the contract.
. . .
17. On January 8th, 2013 without notice and in violation of his contract rights and his rights under New Mexico law, Plaintiff was wrongfully terminated without any cause and in retaliation for exercising his First Amendment Rights regarding issues of critical public importance

including but not limited to:

> i. December 5th, 2012-Protesting at a Curry County Board of County Commissioners meeting the adoption of an inappropriate detention center policy.. . .[Plaintiff's] comments were reported in the local media wherein it was stated that 'Billy and commissioners argued almost two hours over a change in jail policies.'
> ii. Objecting publicly regarding being placed under the supervision of Lance Pyle who has absolutely no training in the running of a Detention Center and is otherwise unqualified, which would leave the Defendant County open to potential liability.
> iii. On August 25th, 2012 Plaintiff requested a public investigation by the State Police regarding false statements by Bobby Sandoval in the local media that [Plaintiff] had attempted or was 'covering up' the investigation of an assault and battery on an inmate occurring on or about June 27th, 2012.

18. Between December 5th, 2012 and January 8th, 2013, Defendants Pyle, Sandoval, Blackburn, McDaniel, and Ashley agreed that Plaintiff should be and would be terminated without proper notice in violation of his contractual and constitutional rights in retaliation for his continued and repeated request for a public investigation of allegation made by Mr. Sandoval of a 'cover up' related to the June 27th, 2012 assault and battery at the Detention Center and other protected First Amendment activities outlined above. Plaintiff was further retaliated against by these Defendants because of his repeated insistence at seeing a report that was prepared by a 'private investigator' hired by the Curry County Board of County Commissioners regarding the incident that has never been provided to him. In fact, only a 'summary' has been prepared for the Defendants.

19. On January 8th, 2013, Plaintiff had no written notice that his contract would be terminated. However, the County Attorney announced at the Commission meeting that this was the last day 'they' could do anything about Plaintiff's contract.  Frank Blackburn then read a prepared statement (which had been prepared long before the meeting when it was decided by Defendants' [sic] to terminate Plaintiff) to in fact terminate Plaintiff's employment.. . .

Defendants assert that Plaintiff's interference with contractual relations claim is

barred by the Tort Claims Act, which, as noted above, grants government entities and

public employees "immunity from liability for any tort" except those for which immunity has been specifically waived, so long as the employee committed the tort "while acting within the scope of duty." *See* NMSA 1978, § 41–4–4.  In Plaintiff's response, he asserts that Defendant Lyle and Defendant Sandoval acted outside the scope of their duties by "engaging in a continuous unlawful campaign against Plaintiff in an attempt to induce the Curry County Board of County Commissioners into breaching its contract with Plaintiff." [Doc. 66 at 6]

As noted above, the Curry County Board of County Commissioners, its board, and county manager all fall within the definition of government entity, and public employee under the Tort Claims Act. Therefore, Plaintiff may not maintain an action against the Curry County Board of County Commissioners, or Defendants Pyle and Sandoval unless the claim alleged fits within one of the waivers of immunity provided under the Tort Claims Act.  *See Begay*, 1985-NMCA-117, & 10, 723 P.2d at 256 (providing that if no specific waiver can be found in the Tort Claims Act, the Court must dismiss a plaintiff's complaint against the governmental entity or its employees).  Although New Mexico recognizes a cause of action for the intentional interference of contractual relations, because the New Mexico Tort Claims Act does not provide a waiver of immunity for the this claim, s*ee El Dorado Utilities, Inc.*, 2005-NMCA-036, & 24-25,109 P.3d at 311, Defendant Curry County Board of County Commissioners, and Defendant Pyle and Sandoval, are entitled to immunity under the Tort Claims Act, so long as they were acting within the scope of their duties when the allegedly tortious conduct occurred. *See* Section

41-4-(3)(B), (C).

The question regarding whether a public employee or government entity is acting within the "scope of duty" is a question of fact, that requires a court, when addressing a motion to dismiss, to find that no set of facts alleged would allow a jury to find that the public employee or government entity was acting outside the scope of his duty when the tort occurred. *See Lobato v. New Mexico Env't Dept., Envl Health Div.*, 838 F.Supp.2d 1213, 1220 (D.N.M. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). If the facts alleged would allow for a jury to find the government entity or public employee was acting outside the scope of duties, the defendant then bears the burden of proving, as an affirmative defense, that the alleged conduct fell within the scope of his duties within the meaning of the Tort Claims Act. *See, e.g, Lobato*, 838 F.Supp.2d at 1220; *Weise v. Washington Tru Solutions, LLC.*, 2008-NMSC-121, &27, 192 P.3d 1244,1254 (providing "[a]n affirmative defense ordinarily refers to a state of facts provable by defendants that will bar [the] plaintiff's recovery once a right to recover is established").

In evaluating whether Plaintiff has alleged a viable cause of action, the Court must separately evaluate whether each named Defendant is subject to a waiver of immunity and whether Plaintiff may sue each named Defendant under the Tort Claims Act. *Johnson ex rel. Estate of Cano v. Holmes*, 377 F.Supp.2d 1069, 1077 (D.N.M. 2004) (citing *Abalos v. Bernalillo District Attorney's Office*, 105 N.M. 554, 557, 734 P.2d 794, 797 (Ct.App.1987)).  In evaluating each claim, the Court must determine whether the factual

allegations contained in the complaint are enough to raise a right to relief above the speculative level.  If the factual allegations contained in the complaint are not enough to raise a right to relief above the speculative level, and it is obvious from the complaint that "the plaintiff has failed to set forth 'enough facts to state a claim to relief that is plausible on its face'" the claim may be dismissed. *Bean v. Curry County Board of County Commissioners et al*, No. 10-cv-443-JP/CG (D.N.M. August 11, 2010).  This requires this Court to assess whether, under any set of facts alleged in the complaint, Defendants' actions can be considered outside the scope of their duties and thus outside the coverage of the Tort Claims Act. If, based on the complaint, the Defendants' actions are considered to be within the scope of the Defendants' duties, then Plaintiff's complaint must be dismissed since the Tort Claims Act does not contain a specific waiver of immunity for an intentional interference with contractual relations claim.

It is well established that "a public employee may be within the scope of authorized duty even if the employee's acts are fraudulent, intentionally malicious, or even criminal." *Seeds v. Lucero*, 2005–NMCA–067, ¶ 10, 137 N.M. 589, 113 P.3d 859 (citing *Risk Mgmt. Div. v. McBrayer*, 2000–NMCA–104, ¶¶ 12, 17, 129 N.M. 778, 14 P.3d 43 ("[T]he legislature likely foresaw the possibility that a public employee could. . . commit malicious, even criminal acts that were unauthorized, yet incidental to the performance of [his or her] duties.")).

In *Bean v. Curry County Board of County Commissioners et al*, the plaintiff filed, among other things, a *prima facie* tort claim against the Curry County Board of County

Commissioners and its board members after she had been terminated from her employment as Administrator of the Curry County Detention Center. No. 10-cv-443-JP/CG (D.N.M. August 11, 2010). The defendants filed a motion to dismiss asserting governmental immunity under the New Mexico Tort Claims Act, noting that the Act does not provide an exception for a *prima facie* tort claim. *Id.* at 20. In response, the plaintiff averred that she was bringing this *prima facie* tort claim against the defendants in their individual capacities for acts committed outside the scope of their official duties. *Id.* In assessing plaintiff's claim, the court determined that plaintiff had failed to specify in her complaint which actions amounted to a *prima facie* tort, and instead had provided a formulaic recitation of the elements of the cause of action. Thus, the court concluded that the *prima facie* tort claim should be dismissed for a failure to state a plausible claim.

Although the court concluded that the plaintiff's *prima facie* tort claim should be dismissed for failure to state a claim, it went on to address whether the allegedly false allegations made by one defendant to another defendant regarding the detention center were actions taken within the scope of duty for each of the individual defendants. *Id.* at 21. The court noted that the allegedly false statements that plaintiff referenced in her response to defendants' motion to dismiss were made by a defendant at a board meeting, and therefore were certainly connected to his duties. *Id.* at 21. The court further noted that a letter from the defendant-county manager to another defendant regarding the plaintiff's job performance was connected to his duties as county manager to deal with county employees and employment issues. *Id.* The court concluded that although the

allegedly false statements made by defendants were distasteful, they were made in the scope of the defendants' duties.  Therefore, the court dismissed the claim with prejudice, noting that it was not convinced that, based on the factual allegations concerning the scope of duty, the claim could be cured by amendment. *Id.* at 22.

 Here, similar to in *Bean*, Plaintiff's First Amended Complaint does not specify which facts support his interference with contractual relations claim, and instead provides a formulaic recitation of the elements of a claim for intentional interference with contractual relations.  In Plaintiff's Response to Defendants' Motion to Dismiss, Plaintiff contends that Defendants were acting outside the scope of their duties and, therefore, are not immune from tort liability under the Tort Claims Act. [Doc. 66 at 5] Plaintiff's First Amended Complaint, however, does not specifically allege that Defendants were acting outside the scope of their duties, nor does it allege that a claim for intentional interference with contractual relations is subject to a waiver of immunity under the Tort Claims Act.[1]

Here, similar to *Bean*, the factual allegations contained in Plaintiff's First Amended Complaint do not support a finding that Defendants were acting outside the scope of their duties.  First, Plaintiff's interference with contractual relations claim specifically "re-alleges each preceding paragraph and incorporates each subsequent

---

[1] Although a plaintiff's complaint need not specifically state the particular waiver provision that applies, the court must be able to garner from the face of the complaint that the cause of action either falls within one of the enumerated waivers, or that the government entity or public employee was acting outside the scope of duty when the alleged tortious conduct occurred. *See, e.g., Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1134-37 (D.N.M. 2011) ( looking to factual allegations of the plaintiff's well-pleaded complaint to determine whether immunity had been waived under the Tort Claims Act, where the plaintiff's complaint neither asserted that a particular waiver of immunity applied, or that the defendants were acting outside the scope of duty when the alleged tort occurred); *see also Johnson*, 377 F.Supp.2d at 1084 (providing that "[i]t is a plaintiff's burden to identify one of the specific statutory sections allegedly waiving immunity" but that the failure to do so does not automatically warrant dismissal).

paragraph of [Plaintiff's First Amended] Complaint," thereby incorporating the preceding paragraphs' assertions that Defendant Pyle and Defendant Sandoval had final decision making power regarding personnel decisions within Curry County and that they were acting within the scope of their duties. [Doc. 10 at 2, &&3,7] Second, the employment contract between Plaintiff and the Curry County Board of County Commissioners required Plaintiff to "report directly to the Curry County Commission for the purposes of the operation and/or management of the Detention Facilities and/or implementation of the terms of this contract" and provided the County with the power to terminate, or extend, the employment agreement. [Doc. 10-1 at 2, 5-7] Therefore, the factual allegations contained in Plaintiff's First Amended Complaint describe actions that appear to be connected to the duties that the board of commissioners, commissioners, and county manager, were requested, required or authorized to perform when managing a county employee, such as Plaintiff's employment. *See* NMSA 1978, § 4-38-18 (empowering the board of county commissioners to generally represent the county in the management of its affairs when no other provision is made by law"); NMSA 1978, § 4-38-19(B) (providing that "[a] board of county commissioners may employ and set the salary of a county manager to conduct the business of the county*, to serve as personnel officer*, fiscal director, budget officer, property custodian and *to act generally as the administrative assistant to the board, aiding and assisting it in the exercise of its duties and responsibilities*"(emphasis added)); *see, e.g., Sean E. v. Fraga*, No. 07-cv-1191-RB/KBM,  072008 WL 8937906, * 10 (D.N.M. October 30, 2008) ("The Supreme Court

of New Mexico has interpreted 'scope of duty,' within the context of the Tort Claims

Act, to include abuses of official power. . .." (citing *Celaya v. Hall*, 2004-NMSC-025,

&25, 85 P.3d 239, 245)).

The Court finds that Defendants' actions were connected to the type of duties that

a public employee such as, a county manager or county commissioner or board would be

requested, required or authorized to perform, and were within the scope of their duties as

defined by Section 41-4-3(G) of the Tort Claims Act. *See* Section 41-4-3(G) (defining

scope of duty as "any duties that a public employee is requested, required or authorized to

perform by the governmental entity, regardless of the time and place of performance");

*Seeds*, 2005-NMCA-067, &10, 113 P.3d at 862 (providing as long as there is a connection

between the public employee's actions at the time of the incident and the duties the

public employee was requested, required, or authorized to perform, the employee is

considered to be acting within the scope of duty).  Because the well-pleaded factual

allegations contained in Plaintiff's First Amended Complaint do not plausibly allege that

Defendants were acting outside the scope of their employment, and Plaintiff has failed to

establish that his claim for intentional interference with contractual relations falls within

one of the enumerated waivers provided by the Tort Claims Act, the Court will dismiss

Plaintiff's claim for interference with contractual relations with prejudice. *See Sean E*,

2008 WL 8937906, * 10  (citing *Twombly* and noting "[a]lthough the issue of whether an

employee is acting within the scope of their duties is ultimately a question of fact, the

Court is required to look for plausibility in the complaint").

### 3. Retaliatory Discharge

A claim for retaliatory discharge is based upon principles of tort and requires a plaintiff to demonstrate, by a preponderance of the evidence, *Chavez v. Manville Products Corp.*, 1989-NMSC-050, &26, 777 P.2d 371, 377, "that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn." *Vigil v. Arzola*, 1983-NMCA-082, &30, 699 P.3d 613, 620, *rev'd in part on other grounds*, 1984-NMSC-090, 687 P.2d 1038, *modified by Boudar v. E.G. & G., Inc.*, 1987-NMSC-077,  &&4-5, 742 P.2d 491, 492–93 (allowing retroactive application), and *modified by Chavez*, 1989-NMSC-050, &25, 777 P.2d 377 (overruling *Vigil*'s clear and convincing evidence standard and adopting a preponderance of the evidence standard and allowing damages for emotional distress).

New Mexico courts created the tort of retaliatory discharge, "as a means of redress for the very limited situation in which an employee has no other means of protection against an employer's breach of public policy." *Salazar v. Furr's, Inc.*, 629 F. Supp. 1403, 1409 (D.N.M.1986).  Therefore, "[i]f the employee already has some protection, either because of an employment contract or through another cause of action, the tort is unnecessary and will not be recognized." *Salazar*, 629 F. Supp. at 1409.

Defendants assert that Plaintiff's retaliatory discharge claim must be dismissed because the Tort Claims Act has not waived immunity in respect to this claim, and that "New Mexico courts have specifically ruled that public officials are immune from suits

for alleged retaliatory discharge . . ..." [Doc. 61 at 5]  Defendants further contend that, even if immunity had been waived, a retaliatory discharge claim is only available to at-will employees and not contract employees, such as Plaintiff.  [Doc. 61 at 5] Plaintiff asserts that Defendants were acting outside the scope of their duties when they "retaliated against Plaintiff for publically airing issues regarding OSHA and safety violations[ ]" and "for exercising  rights protected by the United States Constitution." [Doc. 66 at 6] Plaintiff further asserts that he is allowed to plead alternative and even inconsistent theories, and asserts that he is pleading an alternative at-will theory for this claim. [Doc. 66 at 6]

Whether Plaintiff was an at-will or contract employee is only relevant to Plaintiff's retaliatory discharge claim, if this claim is not barred by the Tort Claims Act. Because the Tort Claims Act has not waived immunity for retaliatory discharge claims, the dispositive issue in this case becomes whether, under any possible construction of the allegations contained in Plaintiff's well-pleaded complaint, the individual Defendants could be found to have been acting outside the scope of their duties.

Plaintiff's First Amended Complaint alleges the following retaliatory discharge claim:

56. The allegations above and below are incorporated herein by reference as if set forth in full herein.

57. Plaintiff has brought to Defendant's [sic] attention potential OSHA and safety violations occurring in the jail.

58. Plaintiff has addressed his safety concerns in public and to the Defendants.

59. The Defendants in retaliation for Plaintiff reporting these activities terminated Plaintiff's employment.

60. Plaintiff's termination by Defendants was unlawful, in violation of public policy and retaliatory because Plaintiff had exercised his First Amendment Rights and addressed manners of public concern regarding the Detention Center.

Plaintiff's claim for retaliatory discharge neither specifically asserts that Defendants were acting outside the scope of their duties, nor does it assert that a particular waiver of immunity applies to this claim. Plaintiff's First Amended Complaint does, however, specifically allege that Defendant Pyle, Defendant Sandoval, Defendant Blackburn, Defendant McDaniel, and Defendant Ashley had final decision making power regarding personnel decisions within Curry County and that they were acting within the scope of their duties. [Doc. 10 at 2, &&3-7] These allegations are incorporated by reference via paragraph 56 of Plaintiff's retaliatory discharge claim.

In accepting the well-pleaded allegations of Plaintiff's First Amended Complaint as true, and construing them in the light most favorable to Plaintiff, the Court must determine whether under any possible construction of the facts alleged, the individual Defendants could be found to have been acting outside the scope of their duties, rendering the Tort Claims Act inapplicable to this claim.

In *Bolduc v. Board of County Commissioners of Luna County, New Mexico et al*, No. 09-cv-371-BB/WPL (D.N.M. January 4, 2010), the court dismissed the plaintiffs' retaliatory discharge claim. The plaintiffs acknowledged that the Tort Claims Act did not waive immunity for their retaliatory discharge claims, but asserted that the Tort Claims

Act was inapplicable because the individual defendants were acting outside the scope of their duties when the retaliatory discharge occurred. *Id.* at 2-3. In examining whether the plaintiffs had stated a claim for retaliatory discharge against the individual defendants, the court noted that the "crucial issue [was] whether, under any possible construction of the allegations of the complaint, the individual Defendants could be found to have been acting outside the scope of their duties." *Id.* at 3.   In so doing, the court noted that there was no way to construe the allegations in plaintiffs' complaint except to aver that the defendants' actions were connected to, and arouse out of, their official duties. *Id.*  The court explained that firing, suspending, supporting or encouraging such actions are part and parcel of the defendants' employment.  *Id.* at 4-5 (providing that whether a public employee acted with malice, a discriminatory intent, or with retaliatory motives when carrying out his or her duties is irrelevant under the Tort Claims Act).  Therefore, because under the specific allegations of the complaint a reasonable fact-finder would not be able to conclude that the defendants were acting outside the scope of their duties, the court dismissed the plaintiffs' retaliatory discharge claim. *Id.* at 5.

Here, similar to *Bolduc*, Plaintiff's First Amended Complaint contains factual allegations regarding actions taken by Defendants that appear to be connected to the types of duties that individual County Commissioners and the County Manager would be requested, required or authorized to perform when carrying out their managerial duties. Moreover, the actions alleged in Plaintiff's First Amended Complaint appear to be connected to the Board of Commissioners' duty to evaluate Plaintiff's performance in

carrying out his duties as Administrator of the Detention Centers. [Doc. 10-1 at 4]  For

example, Plaintiff contends that he was wrongfully terminated without any cause and in

retaliation for: 1) exercising his First Amendment Rights regarding issues of public

importance after publically protesting the adoption of certain detention center policies at

a Curry County Board of County Commissioners meeting; 2) objecting publically to

being placed under the supervision of the county manager, Defendant Pyle; 3)

complaining orally and in writing to the Detention Center Committee meeting  regarding

the "troubling"  large percentage of the jail population had Hispanic surnames; requesting

a study to determine whether there was a mold problem in the detention center's kitchen,

and; 4) expressing concerns that the condition of detention center could open the County

up to liability for OSHA violations.  [Doc. 10 at 7-9] In addition, Plaintiff contends that

Defendants retaliated against him after he requested a public investigation into

allegations made by Defendant Sandoval regarding an alleged cover up of an assault and

battery that occurred at the detention center, and after he insisted on seeing a private

investigator's report regarding the incident. [Doc. 10 at 9]

The Court, in accepting the well-pleaded allegations of the complaint as true, and

construing them in the light most favorable to Plaintiff, finds that the facts contained in

Plaintiff's First Amendment Complaint do not give rise to a finding that Defendants were

acting outside the scope of their duties. Therefore, because the Tort Claims Act does not

provide a waiver of immunity for retaliatory discharge claims and the facts alleged in

Plaintiff's First Amendment Complaint do not support a finding that Defendants were

acting outside the scope of their duties, the Court will dismiss this claim with prejudice.

**IV.**     **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has failed to state an equal protection claim for which relief can be granted. The Court further finds that the Tort Claims Act precludes Plaintiff's claims for retaliatory discharge and interference with contractual relations.  Therefore, *Defendants' Motion to Dismiss* [Doc. 61] will be granted.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion to Dismiss* [Doc. 61] is **GRANTED** (as to Counts II, VI and VII).

**SO ORDERED** this 30th day of September, 2014, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
Chief United States District Judge