## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**GERRY BILLY,**

    Plaintiff,

    vs.                          **No. 2:13-CV-0032 MCA/LAM**

**THE CURRY COUNTY BOARD OF
COUNTY COMMISSIONERS,** a political
sub-division existing under the laws of the State
of New Mexico, and **LANCE PYLE,** Individually
and in his official capacity as County Manager for
the Curry County Board of County Commissioners**,**
**ROBERT SANDOVAL**, Individually, **FRANK
BLACKBURN**, Individually, **BEN MCDANIEL**,
Individually, and **TIM ASHLEY, Individually**,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** is before the Court on *Defendants' Motion to Strike* filed
February 20, 2014 [Doc. 142].  Having considered the parties' submissions, the relevant
case law, and otherwise being fully advised in the premises, the Court will grant in part
and deny in part Defendants' motion.

## I.    PROCEDURAL HISTORY

    Plaintiff Gerry Billy ("Plaintiff") asserts the following claims against Defendants,
the Curry County Board of County Commissioners ("Board"), a political sub-division
existing under the laws of the State of New Mexico, the County Manager, Lance Pyle,
individually and in his official capacity as County Manager for the Curry County Board
of County Commissioners, and the Curry County Board of County Commissioners board

members: Robert Sandoval, individually, Frank Blackburn, individually, Ben McDaniel, individually, and Tim Ashley, individually ("Defendants"): 1) Recovery Under 42 U.S.C. § 1983-Due Process-Property Interest; 2) Violation of Equal Protection; 3) Violation of Due Process Liberty Interest; 4) Violation of First Amendment Rights; 5) Breach of Contract; 6) Retaliatory Discharge; 7) Interference with Contractual Relations; and 8) Violation of the "Whistleblower Protection Act." [Doc. 10 "Plaintiff's First Amended Complaint"]

On October 13, 2013, Defendants filed *Defendants' Motion to Dismiss* [Doc. 42] requesting that the Court dismiss counts 2, 5, and 6 of Plaintiff's First Amended Complaint.[1]   On December 23, 2013, Defendants filed *Defendants' Motion for Summary Judgment* [Doc. 74] on all claims. Plaintiff filed his *Response in Opposition to Defendants' Motion for Summary Judgment* [Doc. 78], on January 13, 2014.  Plaintiff, in support of his *Response in Opposition to Defendants' Motion for Summary Judgment*, also filed 57 supplemental documents, including his own personal affidavit and an affidavit of a former Curry County Commissioner, Dan Stoddard.   [See Docs. 80-137]

On February 20, 2014, Defendants filed *Defendants' Motion to Strike* [Doc. 142], requesting that the Court, pursuant to Fed. R. Civ. P. 56(c)(4), (h), and "Local Rule 1-056(e), (g), and (h),"[2] strike portions of two affidavits that Plaintiff submitted in response to *Defendants' Motion for Summary Judgment*.  [Doc. 142 at 1] Specifically,

---

[1] Concurrent with the filing of this *Memorandum Opinion and Order*, the Court issued an order granting Defendants' Motion to Dismiss.

[2] Defendants citation to "Local Rule 1-056(e), (g), and (h)" as grounds for striking portions of Plaintiff's response is confusing, since D.N.M.LR-Civ. 56 of the Local Rules of Civil Procedure for the District of New Mexico does not contain the sections cited by Defendants. *See* D.N.M.LR-Civ. 56.

Defendants request that the Court strike paragraphs 27, 28, and 46 of Plaintiff's affidavit, and paragraphs 2 and 6 of Dan Stoddard's affidavit, on the grounds that these paragraphs are contrary to the affiants' prior sworn testimony and are being used to create sham issues of fact in an effort to defeat Defendants' *Motion for Summary Judgment*. [Doc. 142 at 2]

## II.   LEGAL STANDARDS

Our Tenth Circuit has stated that generally, in determining whether a material issue of fact exists, a court should not disregard an affidavit for the sole reason it conflicts with the affiant's prior sworn statements. *Gose v. Board of County Com'rs of County of McKinley*, 778 F.Supp.2d 1191, 1195 (D.N.M. 2011) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986)).  A court, however, may disregard a contrary affidavit if it concludes that the affidavit does in fact conflict with the affiant's prior sworn statement, and is merely an attempt to create a sham fact issue. *Gose*, 778 F.Supp.2d at 1195 (citations omitted); s*ee Mitchell v. Zia Park*, *LLC*, 842 F.Supp.2d 1316, 1325 (D.N.M. 2012) (noting that although a conflict alone is insufficient to strike the affidavit, the presence of a conflict is a required prerequisite to striking an affidavit).

In determining whether a conflicting affidavit seeks to create a sham fact issue, a court must consider several factors: 1) whether the affiant was cross-examined during his earlier deposition testimony; 2) whether the affiant had access to pertinent evidence at the time of his deposition or whether the affidavit is based on newly discovered evidence; and 3) whether the earlier testimony shows confusion that the affidavit attempts to explain. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001);

*Law Co., Inc. v. Mohawk Const. and Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (providing that our Tenth Circuit requires that lower courts determine whether the contrary affidavit is simply an attempt to create a sham fact before deciding whether it should be stricken).

Because "the utility of summary judgment, as a procedure for screening out sham fact issues, would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony," *Franks*, 796 F.2d at 1237, our Tenth Circuit requires lower courts to determine whether the contrary affidavit is simply an attempt to create a sham fact before deciding whether it should be stricken.

## III.   DISCUSSION

The Court will first address Defendants' challenges to paragraphs 27, 28, and 46 of Plaintiff's affidavit, and then turn to paragraphs 2 and 6 of Dan Stoddard's affidavit.

### 1.   *Paragraph 27 of Plaintiff's Affidavit*

Defendants request that the Court strike paragraph 27 of Plaintiff's affidavit asserting that it is inconsistent with Plaintiff's deposition testimony, and contains information that was not provided to Defendants during Plaintiff's deposition.

Paragraph 27 of Plaintiff's Affidavit provides:

27. On December 5th, 2012 Lance Pyle interfered with my operation of the Detention Center by sending a 'Memo' to all detention center members regarding 'work place harassment.' This was a violation of my contract which allowed me to operate the Detention Center on a day to day basis without interference from Lance Pyle.

[Doc. 80 at 11, & 27]

Defendants assert that Plaintiff made no mention of the December 5th, 2012

"Memo" as being an example of Defendant Pyle's attempt to undermine him, and that

Plaintiff is only mentioning it now in an attempt to create an issue of fact. [Doc. 142 at 4]

Defendants note that during Plaintiff's deposition, Plaintiff was asked to explain the

manner in which he believed Lance Pyle had undermined him in his operation of the

Detention Center, and to provide specific examples of such conduct. [Doc. 142 at 2]

Plaintiff testified that identifying specific instances was going to be difficult for him to do

at that moment, but noted that "there was friction about an issue over the union" and that

Defendant Pyle wanted him disciplined for not disciplining one of the Detention Center

employees who "sent out. . . a text . . . on county time to all the people in the jail that . .

.were thinking about forming a union. . .." [Doc. 142-1 at 2-3]

     Defendants assert that they relied on Plaintiff's deposition testimony and his

inability to "identify any specific actions by Defendant Pyle that violated his

constitutional rights" in deciding to move for summary judgment [Doc. 142 at 4]

Defendants further assert that it is improper for Plaintiff to attempt to create a question of

fact by relying on his own affidavit to contradict his own prior deposition testimony.

[Doc. 142 at 4] Defendants cite to *Cubie v. Bryan Career Coll., Inc.*, 244 F. Supp. 2d

1191, 1195-98 (D. Kan. 2003) to support this assertion.

     In response, Plaintiff contends that the affidavit was offered to explain or clarify

his deposition testimony in which he expressed confusion and an inability to remember.

[Doc. 146]  Plaintiff contends that "he was never presented with the December 5th

memorandum from [Defendant] Pyle which was in Defendants' possession at all times."

[Doc. 146 at 4]  Because the Memo was produced by Defendants, Plaintiff asserts that

Defendants could have questioned him specifically about the Memo had they chosen to, but instead they chose to ask broad open ended questions that were not clearly directed to the Memo. [Doc. 146 at 4]  Plaintiff, therefore, contends that paragraph 27 should not be stricken. [Doc. 146 at 3-4]

A court will only address the factors outlined above, if the court determines that the affidavit directly conflicts with the prior testimony.  At Plaintiff's deposition, Defense counsel questioned Plaintiff regarding his allegation that Defendant Pyle had "made a conscious effort to undermine" his ability to perform his job. [Doc. 142-1 at 2] Specifically, Defense counsel asked the following:

Q: . . .What I am trying to find out is what do you contend County Manager Pyle did prior [to the termination] that you felt like was undermining you in your position and your organization?

A: Identifying specific instances right now is going to be pretty – is difficult for me at this moment—at this very moment.

I know there was friction about an issue over the union. The—some of the employees had decided to pursue collective bargaining and that became a—an issue.

Q: What did County Manager Pyle do?

A: He wanted me disciplined.

Q: For what? I mean, you mentioned the union but I'm trying to find out what he did vis-à-vis the union that you felt was undermining your position?

A: He felt I should have disciplined one of the employees and a I counseled her….And then sometime later Lance wrote a letter to Steve Doerr and said you know, with –you know, that I should be disciplined, you know. If I, if—you know, I'm not going to discipline the employee and I already had then maybe discipline should be taken against me.

Q: Were you disciplined over the union issue?

A: No, Sir.

Q: Other than the union issue, in what other ways, specifically, do you believe manger, Pyle, undermined you in your position?

\*\*\*

Q: Other than the union issue, and what you believe to be a campaign, if you will, on the part of somebody to have Lance report to you, are there any other ways you can identify for us where you believe Lance attempted to undermine your job performance?

A: I believe Lance had a very strong influence in working with Mr.Doerr and helping to facilitate my termination.

Q: Do you know of any specific thing Lance said or did in that vein?

A: No. Not specifically, no.

\*\*\*

Q: Mr. Billy, we were talking about ways in which you believe Lance had undermined your job at the detention center. Any other specific ways you can share with us?

A: Not that I can recall right now.

Q: And so if we go on the rest of the day here you think of any other way in which you believe Mr. Pyle undermined your position, you'll let us know, right?

A: I assure you I will.

\*\*\*

[Doc. 142-1 at 1-6]

Defendants contend that despite being "asked repeatedly to provide specific examples of situations in which he believed Defendant Pyle had allegedly undermined [his operation of] the Detention Center," Plaintiff did not mention the Memo as being an

example of such conduct.  Plaintiff appears to assert that he did not have access to the information contained in the Memo at the time of his deposition, and that the information provided in paragraph 27 was submitted to explain the confusion he expressed at the deposition.

The Court finds that paragraph 27 does not create a sham fact issue and, therefore, will deny Defendants' request that paragraph 27 of Plaintiff's affidavit be stricken. Although Defense counsel asked Plaintiff multiple times to provide examples of actions taken by Defendant Pyle that Plaintiff believed constituted an attempt to undermine him in the performance of his job, Plaintiff testified that it would be hard to identify specific instances at that moment and that he could not recall any additional instances at that time. In paragraph 27 of Plaintiff's affidavit, he identifies an additional instance in which he alleges Defendant Pyle interfered or undermined his ability to perform his job. This statement does not directly contradict Plaintiff's prior deposition testimony.  Since paragraph 27 of Plaintiff's affidavit does not contradict Plaintiff's prior deposition testimony, the Court does not need to engage in any further analysis regarding whether paragraph 27 was an improper attempt to create a sham fact issue. The Court will not strike paragraph 27 of Plaintiff's affidavit.  *See Seeber v. Williams Companies, Inc.*, No. 04-CV-0451, 2006 WL 2524249, *6 n.8 (N.D.Okla. 2008) (noting that, although the plaintiff's affidavit contained "two additional statements regarding alleged discrimination that she could not recall in her deposition[,]"  the additional statement by itself was "not enough to strike the affidavit," as an attempt to create a shame fact issue).

   2.  *Paragraph 28 of Plaintiff's Affidavit*

Defendants assert that paragraph 28 of Plaintiff's affidavit is an attempt to create a sham issue of fact, and should be stricken. Defendants further contend that this paragraph was submitted in bad faith in contravention of Fed. R. Civ. P. 56(h). Paragraph 28 of Plaintiff's affidavit provides:

> 28. On or about December 13th, 2012 I was provided with an e-mail from Lance Pyle regarding employees attempting to form a union at the Detention Center. As Administrator I had reprimanded the employee for engaging in union business during working hours. However, I did not take other actions that Lance Pyle suggested as violating the Fair Labor Standards Act. Mr. Pyle threatened me with disciplinary action [Exhibit I II attached and incorporated herein by reference.]

[Doc. 80 at 11, & 28] Plaintiff's Exhibit 1-II, as referenced in paragraph 28 is an e-mail from Defendant Pyle in which Defendant Pyle indicated that "if the department head refused to address the matter with disciplinary action; disciplinary action would be taken against them." [Exhibit 1-II]

Defendants assert that Plaintiff was not the recipient of the e-mail referenced in paragraph 28 and, therefore, cannot claim that the e-mail threatened him with disciplinary action.  [Doc. 142 at 5]  In response, Plaintiff asserts that his affidavit states without contradiction that he was a recipient of the e-mail on December 13, 2012, and the e-mail contained an express threat of disciplinary action from Defendant Pyle. [Doc. 146 at 6]

Defendants request that the Court strike paragraph 28 of Plaintiff's affidavit; however, they do not object to the admissibility of the e-mail referenced in paragraph 28, nor do they assert that paragraph 28 of Plaintiff's affidavit violates Fed. R. Civ. P. 56(c)(4) by resting on self-serving conclusory opinions,

allegations unsupported by specific facts, or speculation. *See Argo v. Blue Cross and Blue Shield of Kan.,Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (providing that an affidavit based on mere belief is not sufficient to preclude summary judgment); *see also Chavez v. County of Bernalillo*, No. Civ. 13-0309 JB/LFG, 2014 WL 936426, *13 (D.N.M. Jan. 31, 2014) (internal quotation marks and citations omitted).  Instead, Defendants offer a general objection to paragraph 28 on the ground that it is being offered to create a sham fact issue.  This general objection is insufficient to establish an adequate ground for relief as "[a] court is not required to research and construct a legal argument to support a party's blanket objection." *Lobato v. Ford*, 2007 WL 2593485, *16 (D.Colo. 2007) (declining to strike an affidavit and noting that a "court is not required to research and construct a legal argument to support a party's blanket objection").

Moreover, Defendants appear to be challenging the veracity of the statements contained in paragraph 28 of Plaintiff's affidavit. This is not a valid basis for a court to strike a portion of an affidavit as it would require the court to weigh credibility.  *Porter v. West Side Restaurant, LLC*, No. 13–1112–JAR–KGG, 2014 WL 1642152, *5 (D.Kan. April 24, 2014) (providing a court does not weigh credibility on summary judgment); *KMMentor, LLC v. Knowledge Management Professional Soc., Inc.*, 712 F.Supp.2d 1222, 1236 (D.Kan. 2010) ( "The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case." ). Therefore, because Defendants failed to establish adequate grounds for the requested relief, and

because the Court is not required to research and construct a legal argument to

support Defendants' general objection to paragraph 28, this Court will not strike

paragraph 28 of Plaintiff's affidavit.[3]

### 3. *Paragraph 46 Plaintiff's Affidavit*

Defendants assert that paragraph 46 of Plaintiff's affidavit, in which Plaintiff avers

he has sought employment, but has not been successful because of the pending lawsuit,

conflicts with Plaintiff's prior deposition testimony, in which Plaintiff testified that he

had not applied for any jobs since leaving his position as Detention Center Administrator,

and should be stricken. [Doc. 142 at 6] Defendants, therefore, assert that Plaintiff is

attempting to use paragraph 46 of his affidavit to create a sham fact issue in an effort to

defeat Defendants' motion for summary judgment. [Doc. 142 at 6]

Paragraph 46 of Plaintiff's affidavit provides:

> 46. I have complied with the regulations seeking replacement
> employment since receiving unemployment compensation. I have sought
> employment but such activities have not been fruitful because of the
> pending law-suit. [sic] I have not received one project from the National
> Institute of Corrections through the United States Department of Justice
> since filing this law-suit. [sic] Before my termination I served as a
> consultant regularly for over thirty years. I have worked in every state
> except Alaska and Hawaii doing jail facility assessments of all sizes and
> types and as a part of these projects, making recommendations for
> operational and/or physical plant improvements. I have completed at least
> fifty (50) such jail assessments in the State of Ohio alone. My ability to
> receive other employment opportunities in the detention field have been
> closed because of the stigmatizing statements referenced in this affidavit.

[Doc. 80 at 18, &46]

---

[3] The Court notes that in deciding *Defendants' Motion for Summary Judgment* it will only consider admissible evidence.

At Plaintiff's deposition, Plaintiff and Defense counsel engaged in the following

exchange:

>Q: Since you have left Curry County have you done any work for pay since January the 8th?

>A: No, sir.

>Q: Have you applied for employment?

>A: I am following the provisions established by the New Mexico Work Force Solution. I'm currently receiving unemployment insurance.

* * *

>Q: . . .Are you saying you have applied for work since leaving Curry County?

>A: No, Sir.

>Q: Are you required to do that in order to continue to receive unemployment?

>A: I'm required to follow the rules which is to search for work which I am doing. The problem is that given the specialization of this particular business and the far and few between opportunities that exist, and the fact that I have a national reputation as-- in a world of direct or in the world of jails, nobody wants to –I'm under the—this is my take on it, that I would not get hired until this case is resolved.

>Q: So to satisfy your obligations under your unemployment insurance, what efforts have you made to search for work?

>A: Three or four times a week I seek out employment opportunities. I have a – and those are – you know, I belong to several job-search companies and they send me daily notifications, trade manuals. I also go online and look for the American Jail Association as well as the American Correctional Association.
>
>   When I was at the AJA conference, this year's conference . . ., I did a lot of networking with employees. There was a lot of curiosity as to why I was fired and so, you know, I continued to do those things in accordance with the directives of the Department of Work Force Solutions.

Q: In your efforts to see what is out there, I assume you've come across at least a couple, in the time since you've been away from Curry County, at a least a couple places out there that are looking for jail administrators; is that fair to say?

A: Yes, sir.

Q: Have you applied at those places?

A: No, sir.

Q: Why not?

A: I want to resolve this case. I am under the impression – and a lot of them were far away.

\* \* \*

Q: Well, I just need to know if there is any other reason that you haven't applied for one of these open jail administrator positions that you've come across other than you just want to get this lawsuit over first?

A: That's the primary reason, absolutely.

Doc. 142-1 at 5-6]

Defendants assert Plaintiff was thoroughly questioned about his efforts to find employment after leaving his position with the Detention Center, and testified that he had not applied for jobs because he did not believe he would get hired until this case was resolved. [Doc. 142 at 6]  This testimony, Defendants assert, conflicts with paragraph 46 of Plaintiff's affidavit, in which Plaintiff states he has sought employment, but has not been successful because of the pending lawsuit.  Defendants, therefore, assert that Plaintiff is attempting to use paragraph 46 of his affidavit to create a sham fact issue in an effort to defeat Defendants' motion for summary judgment. [Doc. 142 at 6]

Plaintiff refutes Defendants' assertion that his deposition testimony conflicts with

his affidavit. In so doing, Plaintiff asserts that his deposition testimony reflects that "[t]hree or four times a week [he would] seek out employment opportunities" and that he decided not to apply for a job in Texas because of the pay range. [Doc. 146 at 7]

Before a court may strike a portion of an affidavit on the grounds it creates a sham issue of fact, the Court must be satisfied that the affidavit does in fact directly contradict the affiant's prior sworn testimony. *See Mitchell*, 842 F.Supp.2d at 1325 (noting that "[w]hen presented with a request to strike an affidavit in whole or in part, courts must first determine whether the affidavit does in fact conflict with the affiant's prior sworn statements").

The testimony provided by Plaintiff at his deposition indicated that he had been "seeking" employment but did not believe he would get hired because of the pending lawsuit, and had not applied for any jobs.  In paragraph 46 of Plaintiff's affidavit, Plaintiff avers that he had been complying "with the regulations seeking replacement employment since receiving unemployment compensation" and that he had "sought employment but such activities have not been fruitful because of the pending law-suit." In both, Plaintiff's affidavit and in his deposition testimony, Plaintiff stated he had been seeking employment.  When questioned regarding whether he had applied for jobs, he responded he had not.  Defendants assert that this is conflicting testimony.

The Court does not agree and notes that Defendants appear to be conflating "applying for jobs" with "seeking jobs" insofar as they contend that because Plaintiff has not applied for jobs, he cannot claim that he has been seeking, or has sought, employment.  In recognizing a distinction between the act of seeking employment and the

act of submitting an application, the Court finds that Plaintiff's affidavit stating he has sought employment, does not conflict with his deposition testimony that he has not applied for any jobs.  Therefore, the Court will not strike paragraph 46 on the grounds it is contrary to Plaintiff's prior testimony.[4]

In addition, Defendants assert that the Court should strike paragraph 46 insofar as it contains self-serving, speculative statements regarding the lack of consulting jobs that Plaintiff has received since leaving the Detention Center. [Doc 142 at 6] Specifically, Defendants assert that Plaintiff states he had regularly served as a consultant for over thirty years, but has failed to offer any information, other than his own statements, linking his lack of consulting jobs with the termination of his employment with the Detention Center. [Doc. 142]

Plaintiff contends that, following his termination, he had sought out employment as a consultant but that, despite his credentials, he had not received one consulting job. [Doc. 146 at 8] Plaintiff credits his inability to secure a consulting job to the fact the corrections industry is interconnected and people were inquiring as to the reasons for his termination. [Doc. 146 at 8] Plaintiff supports this assertion by attaching a portion of his deposition testimony, providing:

> Q: Can you give me the names of any of those folks who expressed surprise at what happened to you?

> A: Sure, you mean from—well, Peter Parchell, was one, Frank Hecht.

---

[4] The Court notes that Plaintiff's deposition testimony indicates that he believed he would not be able to get a job because of the present lawsuit, whereas his affidavit states that belief in a more affirmative fashion by stating his attempts at seeking employment had not been fruitful because of this lawsuit. This slight inconsistency is not sufficient to support a finding that Plaintiff's deposition testimony directly conflicts with his affidavit.

Q: Where is he from?

A: He was managing the Tohono O'odam Reservation. . . .That's in Pima, Arizona.

* * *

Q: Who else?

A: Sheriff Thorp, Randy Thorp who succeeded me. He was my chief deputy.
Q: There in Ohio?

A: Yes, sir. Oh, what's his name? Kelly.

Q: Who was that?

A: Kelly was the former Administrator of the Lubbock county facility and then the sheriff. Robert Patterson. He was a close friend. He's from Texas.

Q: Other than those comments that you received or questions you received from your cohorts in the jail administrative business, any other ways that you can identify for us concrete, specific ways that your reputation has been harmed by this?

A: As I mentioned, I do a lot of work---did a lot of work for the National Institute of Corrections. I was a—I did a lot of jail assessments around the nation.
I spoke with one of the administrators and, in fact, she called me and I said, you know, 'I'm ready to go back to work.'
And she says, 'Well, we'll see if we can find anything,' and I've yet to hear from them.
There's been no correspondence since.

[Doc. 146-1 at 2-3].

An "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

This requires that a court disregard statements of mere belief, and precludes a party opposing summary judgment from resting on self-serving conclusory opinions, allegations unsupported by specific facts, or speculation. *See Argo.*, 452 F.3d at 1200 (10th Cir. 2006) (providing that an affidavit based on mere belief is not sufficient to preclude summary judgment); *see also Chavez*, 2014 WL 936426 at *13 (same).

The Court agrees with Defendants that insofar as paragraph 46 contains self-serving, speculative statements regarding the reason why Plaintiff has not received a consulting job, it should be stricken. Plaintiff has not provided facts to support his averment that he has been unable to secure a consulting job because of the circumstances surrounding his termination. Rather, Plaintiff's affidavit merely expresses his belief that his termination from the Detention Center has prevented him from being able to secure employment. Because a court must disregard statements of mere belief, the Court will strike the following portions of paragraph 46: "but such activities have not been fruitful because of the pending law-suit. [sic]"  and "My ability to receive other employment opportunities in the detention field have been closed because of the stigmatizing statements referenced in this affidavit." [Doc. 80 at 18, &46] Therefore, Defendants' motion to strike paragraph 46 of Plaintiff's affidavit will be granted in part and denied in part.

    *4.  Paragraph 6 of Dan Stoddard's Affidavit*

Defendants request that the Court strike paragraph 6 of former county Commissioner, Dan Stoddard's affidavit. In support of this request, Defendants assert that the statements contained in paragraph 6 of Mr. Stoddard's affidavit are not based on

personal knowledge, and conflict with Mr. Stoddard's deposition testimony, where Mr. Stoddard indicated that he did not have first-hand knowledge that Defendant Pyle would place employees in the Detention Center to receive information on Mr. Billy. [Doc. 142 at 7]

Plaintiff contends that any alleged contradictions between Mr. Stoddard's affidavit and Mr. Stoddard's deposition testimony go to the weight of the testimony, not its admissibility.  Plaintiff appears to assert that because Mr. Stoddard's affidavit was signed before Mr. Stoddard's deposition transcript had been made available, the Court should not strike paragraph 6 of Mr. Stoddard's affidavit.[5] [Doc. 146 at 8] Plaintiff further asserts that Defendants have failed to provide authority to support their argument that when an affidavit—that is executed before the affiant's deposition testimony has been transcribed and made available—contradicts with the affiant's deposition testimony, the conflicting portion of the affidavit should be stricken.

Paragraph 6 of Mr. Stoddard's affidavit provides:

> I Dan Stoddard being first duly sworn upon my oath state and depose of my own personal knowledge:
>
> * * *
>
> 6. Pyle placed employees in the Detention Center so that he could receive 'feed back' [sic] from these employees about Mr. Billy's performance.

---

[5] Plaintiff places great emphasis on the fact that the affidavit was executed prior to receiving the deposition transcript.  However, regardless of when the transcript became available, if Mr. Stoddard or Plaintiff had wanted to review, and possibly clarify, Mr. Stoddard's deposition testimony, the proper avenue would have been under Fed. R. Civ. P. 30(e), which provides for review and changes by the witness when:  (1) . . . On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

[Doc. 122 at 2, &6]

At Mr. Stoddard's deposition, he and defense counsel engaged in the following

exchange. Mr. Stoddard testified as follows:

A.  And I feel he tried to continue to undermine the jail or be
involved in it the same way he did in the past.

Q.      How so? I mean that's something I wanted to drill down into
and see if you have specifics to give us.

A. Well, just from the past administrators that complained about him
meddling in what they were doing at the jail, how they would handle their
disciplinary problems, how they would try to handle their staff, that he – I
was told by one the employees, and I don't remember who, that they would
try –

Q.  He being Mr. Pyle?

A. – Mr. Pyle, I'm sorry. Would hire or get people hired over there
so he could have somebody there who could relate back to him at his office
what was going on over there.. . .

* * *

Q. Okay. Well I appreciate you sharing all that with me because I
was going to get into that at some point, but specifically as  regards  [to] the
jail, you've mentioned the issue of him seeing to it that jail personnel are
hired and placed over there –

A. Yes.

Q. -- and they are people that can or will report back to him?

A.   And as I said, that was an employee who told me that. I don't
have firsthand knowledge of that but I don't doubt it.

[Doc. 142-2]  Mr. Stoddard was deposed on December 19, 2013, and he executed his

affidavit on January 7, 2014. [Doc. 142-2 at 1 (Deposition); Doc. 122 at 4 (Affidavit)]

Mr. Stoddard testified at his deposition that he did not have first-hand knowledge that Mr.

Pyle had hired and placed jail personnel at the detention center, for the purpose of reporting back to him, but that an employee had told him that.  [Doc. 142-2] This deposition testimony directly conflicts with Mr. Stoddard's affidavit, which provides that "that the statements contained in the affidavit [were] based on his personal knowledge" and that Defendant Pyle had placed employees in the Detention Center so that he could receive feedback regarding Plaintiff's performance. [Doc. 122 at 1- 2, &6]

Because Mr. Stoddard's prior deposition testimony directly conflicts with his affidavit, the Court will look to the following factors to determine whether the conflicting affidavit seeks to create a sham fact issue: 1) whether the affiant was cross-examined during his earlier deposition testimony; 2) whether the affiant had access to pertinent evidence at the time of his deposition or whether the affidavit is based on newly discovered evidence; and 3) whether the earlier testimony shows confusion that the affidavit attempts to explain. *Ralston*, 275 F.23d at 973.

In applying these factors to the present case, the Court finds that 1) Mr. Stoddard was cross-examined during his earlier deposition testimony; 2) Mr. Stoddard had access to pertinent evidence at the time of his deposition; and 3) the earlier testimony does not show confusion, that Mr. Stoddard attempts to explain with his affidavit.  [Doc. 142-2 at 4] Therefore, the Court finds that paragraph 6 of Mr. Stoddard's affidavit creates a sham issue of fact and should be stricken.

   5.  *Paragraph 2 of Dan Stoddard's Affidavit*

Defendants requests that the Court strike paragraph 2 of Mr. Stoddard's affidavit because it contains allegations regarding actions taken by Mr. Pyle before Plaintiff was

hired to serve as the Detention Center Administrator and, therefore, is irrelevant. [Doc. 142 at 9]

Paragraph 2 of Mr. Stoddard's affidavit provides:

I Dan Stoddard being first duly sworn upon my oath state and depose of my own personal knowledge:
* * *
2. At the beginning of my term, either on Friday or Monday before Tuesday meeting, Lance Pyle would call commissioners into his officer and go over the agenda. Lance Pyle would tell me and the other commissioners how the Commission should handle the issue and vote. I stopped going to such meetings because I felt it was a violation of the New Mexico Open Meetings Act and a 'rolling quorum.' I know that other commissioners continued to attend such pre-County Commissioner meetings.

[Doc. 122 at 2, &2] Defendants contend that this is an improper attempt to create an issue of fact insofar as it describes certain activities that allegedly occurred prior to Plaintiff being employed at the Detention Center in an effort to imply that the alleged actions played a role in Plaintiff's termination. Defendants further assert that Mr. Stoddard  testified at his deposition that Defendant Pyle had discontinued the practice alleged in paragraph 2, and that he did not have any personal knowledge regarding whether Defendant Pyle had made an effort to institute a rolling quorum to address the renewal or non-renewal of Plaintiff's contract. [Doc. 142 at 9]

Mr. Stoddard's deposition testimony provides:

Q: And the mere fact that they were coming to [Mr. Pyle's] office to discuss issues involving county business does not necessarily mean there's any effort to institute what's known as a rolling quorum to gather votes, right?

A: Well, I will say this . . .When I first became commissioner, we used to come here and Mr. Pyle would explain our packets to us.

Q: This is before meetings?

A: Yes

Q: Okay

A: Which to me I considered that a rolling pole and I wouldn't do it. Our job as commissioners is to read the information, do our own background on what the issues are so we can make our opinion, and in an open meeting take recommendations.

Q: Did you attend any of these meetings where Mr. Pyle attempted to, as you explain it, explain the packet?

A: Yeah, in the beginning when I was a new commissioner and it didn't make sense to me. . ...

Q: What would Mr. Pyle say to you in the context of explaining the packet?

A: He would tell me his opinion on how the county should move forward on whatever issue he was concerned about.

Q: And you felt that was improper?

A: I do. Yes.

Q: Why?

A: . . .he should have voiced his opinion to all the commission so we all heard it at the same time but it was after we read the information. And he finally stopped doing that, I'll have you know. So maybe he thought about it and thought maybe that wasn't such a good idea either, I don't know.

Q: Okay. Well to be specific about Mr. Billy's situation –

A: Yes.

Q: --you don't have any personal information of your own personal knowledge of an effort being made to institute a rolling quorum concerning the issue of renewal or non-renewal of Mr. Billy's contract, do you?

A: I don't have any personal knowledge at all.

[Doc. 142-2]

Plaintiff contends that Defendants have misinterpreted Mr. Stoddard's affidavit and deposition testimony.  First, Plaintiff asserts that Mr. Stoddard's affidavit specifically states that although he stopped going to the meetings, he knew "that other commissioners continued to attend such pre-County Commissioner meetings" and therefore Defendants have incorrectly asserted that Mr. Stoddard's affidavit states that rolling quorums only took place at the beginning of his term. [Doc. 146 at 9]  Plaintiff also contends that Defendants have misinterpreted Mr. Stoddard's deposition testimony that "Mr. Pyle discontinued this alleged practice." [Doc. 146 at 9] Plaintiff asserts that this practice stopped in relation to Mr. Stoddard when he stopped attending the meetings, but that other commissioners continued to attend meetings in Mr. Pyle's office up until Plaintiff's termination. [Doc. 146 at 9-10]

The Court will not strike paragraph 2 of Mr. Stoddard's affidavit as an attempt to create a sham fact issue.  Federal Rule of Civil Procedure 56(C)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge. " *Id.* "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." *Argo*, 452 F.3d at 1200 (internal quotation marks and citation omitted).  Here, Mr. Stoddard served as a county commissioner for Curry County from January 1, 2008, through December 31, 2012.  [Doc. 122] At his deposition, Mr. Stoddard testified regarding his experience working with Lance Pyle during his time as a commissioner.

Mr. Stoddard testified regarding Lance Pyle's alleged practice of holding pre-commission meetings in his office; Lance Pyle's discontinuation of the alleged practice; and, his lack of personal knowledge regarding whether Lance Pyle had made an effort to institute a rolling quorum concerning the issue of renewal or non-renewal of Plaintiff's contract. [Doc. 142-2] This does not directly contradict paragraph 2 of Mr. Stoddard's affidavit, in which he avers that "[a]t the beginning of his term . . .Lance Pyle would call commissioners into his office . . .[and] tell [Mr. Stoddard] and the other commissioner how the Commissioner should handle the issue and vote." [Doc. 122]  During his service as a commissioner, Mr. Stoddard could have perceived or observed that which he testifies to in paragraph 2.   Therefore, the Court disagrees with Defendants that paragraph 2 of Mr. Stoddard's affidavit was not based on personal knowledge, and will not strike paragraph 2 on that basis.

The Court, however, will grant Defendants' motion to strike paragraph 2 of Mr. Stoddard's affidavit as irrelevant.  These statements address events that did not involve Plaintiff, and therefore, do not make it more or less probable that Lance Pyle was instituting  a rolling quorum during the period of Plaintiff's employment.  Moreover, Plaintiff was hired in January 2012 and Mr. Stoddard served as a commissioner until his term ended on December 31, 2012. Therefore, despite the fact that Mr. Stoddard served on the Curry County Board of County Commissioners for the first eleven months that Plaintiff served as the Detention Center's Administrator he testified that he did not have any personal knowledge regarding whether Lance Pyle had made an effort to institute a rolling quorum concerning the issue of renewal or non-renewal of Plaintiff's contract.

The fact that Lance Pyle had allegedly held such meetings at the beginning of Mr. Stoddard's term, does not make it more or less probable that he was holding such meetings to address Plaintiff. Therefore, the Court will strike paragraph 2 as irrelevant.

## V.     CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to strike as it relates to paragraphs 27 and 28 of Plaintiff's affidavit, grant in part and deny in part Defendants' motion as it relates to paragraph 46 of Plaintiff's affidavit, and grant Defendants' motion to strike as it relates to paragraphs 2 and 6 of Mr. Stoddard's affidavit.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion to Strike* [Doc. 142] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED** this 30th day of September, 2014, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
Chief United States District Judge